CLARA CHEATEM, Plaintiff-Appellee, *v.* JAMES A. COOK, Defendant— (CORONET INSURANCE COMPANY, Garnishee Defendant-Appellant.)

(No. 56139;

First District—November 1, 1972.

*Rehearing denied December 6, 1972.*

Haft, Shapiro & Haft, of Chicago, (Morris A. Haft, of counsel,) for appellant.

William W. Sher and Martin Tiersky, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

Coronet Insurance Company, the garnishee-defendant, appeals from a judgment entered in the Circuit Court of Cook County awarding $10,000.00 and costs in favor of the defendant, James A. Cook, for the use of the plaintiff, Clara Cheatem.

The issues presented on appeal are: (1) whether the liability insurance policy issued by Coronet Insurance Company to James A. Cook was in effect on November 24, 1965, the date of the accident involving the automobile of James A. Cook and the plaintiff, Clara Cheatem; (2) whether the trial court erred in refusing to admit certain evidence which the appellant asserts would tend to establish North Central Insurance Agency acted as Cook's agent in directing a cancellation of his insurance policy; (3) whether the trial court erred in allowing James A. Cook to testify as an adverse witness under section 60 of the Illinois Civil Practice Act (Ill. Rev. Stat., ch. 119, sec. 60); and (4) whether the modification of judgment allowed by the trial court subsequent to Coronet's filing of their notice of appeal should be allowed to stand.

On June 30, 1965, pursuant to an application submitted by the North Central Insurance Agency, Inc., Coronet Insurance Company issued an automobile liability insurance policy to James A. Cook for one year commencing July 1, 1965. Coronet Insurance Company sent the original policy to North Central upon its request. Based on the fact that Cook had financed the insurance policy through the Shield Acceptance Corporation, operated by the North Central Insurance Agency, at a rate of $25.00 down and $10.55 per month, the agency retained the original policy and sent a copy of the policy to Cook.

On September 2, 1965, Coronet received a written direction from North Central cancelling the policy previously issued to Cook for non-payment of premium. North Central also requested a *pro rata* refund of the unearned premium owed to it by Coronet based on this cancellation. Coronet complied with both requests. No notice of such action, however, was sent to Cook, and he continued to make payments to North Central for the months of September, October and November. On November 19, 1965, North Central sent a letter to Cook notifying him that his insurance was being rewritten for a full year and advising him full credit would be given for all payments made.

Subsequently, on November 24, 1965, Cook was involved in an automobile accident with Clara Cheatem. A lawsuit was filed against Cook who forwarded the summons and complaint to Coronet Insurance Com-

pany. Coronet, however, returned these documents to Cook with a letter advising him his policy had been cancelled on September 2, 1965. Thereafter, on December 11, 1967, a default judgment was entered against Cook in the amount of $15,000 and costs. Garnishment proceedings were then instituted by Cheatem against Coronet Insurance Company. Coronet answered that it had no funds or property belonging to Cook and it was not indebted to Cook. The answer was contested, and a judgment of $10,000, the amount of the policy, and costs was entered in favor of Cook on March 30, 1971. Subsequently, on April 14, 1971, the judgment order was modified in favor of Cook for the use of the plaintiff, Clara Cheatem. It is from this judgment that the garnishee-defendant herein appeals.

Coronet Insurance Company contends that on the date of defendant Cook's accident, November 24, 1965, the automobile liability insurance policy which it had previously issued to Cook was not in effect. The basis for Coronet's contention lies in its interpretation of the relationship between North Central Insurance Agency, Inc., and Cook. Coronet asserts that on September 2, 1965, when North Central requested Coronet to cancel Cook's policy for an alleged non-payment of premium, North Central was doing so within the scope of its authority as Cook's agent. Pursuant to paragraph 16 of the insurance policy which Coronet had issued to Cook, Coronet concludes it properly honored the request to cancel Cook's policy as tendered by his agent, North Central. Paragraph 16 of the insurance policy reads as follows:

> "16. Cancellation. This policy may be cancelled by the assured named in Item 1 of the Declarations by surrender thereof to the company, or any of its authorized agents * * *."

In support of its contention that it cancelled the policy in response to a request by Cook's agent, North Central, acting within the scope of its authority, Coronet cites several cases. In light of the factual situation which the record in the instant case reflects, we do not find any of these cases to be in point. The case which Coronet most heavily relies upon is *Fowler Cycle Works v. Western Insurance Co.* (1904), 111 Ill.App. 631. Unlike the factual situation in *Fowler*, there is no evidence in the instant case that North Central had authority, whether express or implied, to do anything for Cook other than solicit a valid automobile liability insurance policy for him. The instant case can also be distinguished from *Fowler* in that the record reflects no evidence wherein Cook granted North Central the authority to retain the original policy which Coronet had issued to Cook. The record further reflects that although Cook financed the premium of the policy solicited for him by North Central through the Shield Acceptance Corporation, neither the original financing agreement between Cook and Shield Acceptance, nor the original pay-

ment coupons from which any authority of agency might be construed were introduced into evidence at trial. Finally, there was no evidence offered to show contact between Cook and North Central prior to North Central's directive of September 2, 1965, to Coronet to cancel Cook's policy, from which a grant of authority by Cook to North Central to cancel such policy with Coronet could be construed.

■■ In *Central National Bank in Chicago v. Jamerson* (1964), 50 Ill. App.2d 233, the court, faced with a factual situation similar to the instant case, found from the evidence no lasting agency beyond mere solicitation of a policy existed between the insured and his broker. The court in *Central National Bank v. Jamerson* stated that in light of the evidence, if any other fact to contradict the existence of an agency relationship is needed, one can point to the broker's direction to the insurance company to cancel the policy for non-payment of a premium, which is surely not the work of an agent working on behalf of an insured. We find a similar situation in the instant case. Furthermore, we also have before us the fact that North Central not only requested but also was credited for the unearned premium owed it by Coronet on the policy. In light of these facts, we reject Coronet's contention that North Central was acting within the scope of its agency when it requested the policy issued to Cook to be cancelled.

The second issue presented for review is whether the trial court erred in refusing to admit certain evidence which the appellant asserts would tend to establish North Central Insurance Agency, Inc., as Cook's agent in directing a cancellation of his policy.

Coronet contends the trial court erred when it excluded from evidence certain exhibits presented by Coronet. These exhibits were a specimen copy of the financing agreement of the type which the defendant, Cook, entered into with Shield Accepance Corporation (Exhibit 21), and specimen copies of the installment coupons of the type which had been executed by Cook in payment of the premiums for his liability insurance policy (Exhibits 22A and 22B).

■■ We do not accept Coronet's contention that the trial court erred. The record reflects the trial court refused to admit as evidence not only the specimen copy of the financing agreement but also the specimen copies of the installment coupons based on the objections of the plaintiff's counsel. The basis for such objection was the fact that the specimen financing agreement tendered by Coronet, as well as the specimen installment coupons, were only copies and, therefore, barred by the best evidence rule. Furthermore, the financing agreement did not, at the time it was signed by Cook, contain the name of the insurance company through

which Cook was to be insured. Such an omission, the trial court correctly ruled, rendered the financing agreement void pursuant to the requirements set forth in that section of the Illinois Commercial Code which require a security agreement contain a description of the collateral at the time the agreement is signed by the debtor. (Ill. Rev. Stat., ch. 26, sec. 9—203 (1) (b).) We therefore reject Coronet's contention that the exclusion of certain evidence by the trial court was error.

The third issue presented for review is whether the trial court erred in allowing the defendant, James A. Cook, to testify as an adverse witness pursuant to section 60 of the Illinois Civil Practice Act. (Ill. Rev. Stat., ch. 110, sec. 60.)

■■ Coronet contends the trial court erred in allowing the defendant, Cook, to be called to testify as an adverse witness in the instant case. The basis for Coronet's contention is that Cook was only a nominal party to the garnishment action in which the plaintiff was seeking a judgment from Coronet and, therefore, was not an adverse witness.

We also reject this contention as presented by Coronet. James A. Cook was the defendant in the instant case, not a nominal party as Coronet would have us believe. In pertinent part, section 21 of the Illinois Civil Practice Act states:

> "sec. 21. Designation of Parties—Misnomer.
> (1) The party commencing an action shall be called the plaintiff. The adverse party shall be called the defendant." Ill. Rev. Stat., ch. 110, sec. 21.

In light of this section of the Illinois Civil Practice Act, we find the trial court properly allowed James A. Cook to be called and testify as an adverse witness pursuant to par. 60 of the Civil Practice Act.

We find the cancellation of the policy by Coronet to be invalid and, therefore, hold the policy of liability insurance issued by Coronet to James A. Cook was in full force and effect on November 24, 1965, the date of defendant Cook's accident with the plaintiff.

■■ The final issue presented for review is whether the order entered by the trial court on April 14, 1971, which modified the judgment award of $10,000 and costs, entered on March 30, 1971, should be allowed to stand. Coronet contends the modified judgment in favor of Cook for the use of the plaintiff, Clara Cheatem, should not be allowed to stand. Coronet bases its contention on Supreme Court Rule 301, the effect of which is that once a notice of appeal is filed in the lower court the appeal is perfected, thereby divesting the lower court of all jurisdiction in the matter. Coronet filed its notice of appeal in the instant case on April 1, 1971.

We accept Coronet's contention as valid as to the modification of the judgment and therefore reverse the order of the trial court modifying the original judgment. The original judgment of $10,000 remains in full force and effect.

For the reasons stated herein, the judgment of the Circuit Court of Cook County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

BURMAN and ADESKO, JJ., concur.