**In the Matter of Alva Dale ALLEN, Bankrupt.**

**In re ALLEN LAND COMPANY, Bankrupt.**

**In re Lyle Franklin ALLEN, Bankrupt.**

**Nos. B 71–400–D, B 72–16–D, B 72–18–D.**

United States District Court, E. D. Illinois.

June 3, 1975.

Francis J. Davis, Auler Law Offices, Champaign, Ill., for Bankrupts.

John T. Allen, Danville, Ill., for Harrisburg Production Credit Ass'n.

D. Cameron Dobbins, Dobbins, Fraker & Tennant, Champaign, Ill., for B. C. Christopher & Co., appellant.

Edward Litak, Danville, Ill., trustee in bankruptcy.

Larry Lessen, Danville, Ill., Bankruptcy Judge.

OPINION AND ORDER

WISE, Chief Judge.

On December 6, 1974, B. C. Christopher & Co. filed a notice of appeal in this Court from an order of the Bankruptcy Judge entered in the above-entitled cases on November 27, 1974, ordering the Trustee to pay to Harrisburg Production Credit Association certain sums of money. A motion to dismiss the appeal of B. C. Christopher & Co. was filed by Harrisburg Production Credit Association on December 6, 1974. On January 30, 1975, this Court entered an order denying Harrisburg's motion to dismiss the appeal.

In writing this opinion, the Court has omitted a discussion of the facts leading to the Bankruptcy Judge's decision because the appellant has limited his appeal to a question of law; however, this Court did review the facts and does find that they support the Bankruptcy Judge's decision.

The question of law now before the Court is whether the security agreement between Harrisburg Production Credit Association and the Bankrupts, although signed in blank and filled in at a later date to properly reflect the terms of the parties, was valid.

After a thorough review of the briefs filed in behalf of all the parties, oral argument of counsel heard, this Court holds that the security agreement of Harrisburg Production Credit Association with the Bankrupts was valid.

The applicable Illinois law regarding attachment and enforceability of security interests is found in Chapter 26, Illinois

Revised Statutes, § 9–203, which provides in part:

1. Subject to the provisions of . . . a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

   (a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops . . . ; and

   (b) value has been given; and

   (c) the debtor has rights in the collateral.

Appellant's theory is based on the fact that the Bankrupts signed the security agreement before a description of the collateral was written in the agreement. However, a careful reading of § 9–203 and the following comments indicate that a security interest is created when the requirements listed in § 9–203(1)(a), (b) and (c) have been completed. There is no specific language requiring that the acts may be consummated in any particular order.

As stated in Chapter 23, § 23–2, Uniform Commercial Code Hornbook Series by White & Summers, in reference to the creation of valid and enforceable Article Nine Security Interests:

"Sections 9–203 and 9–204 of Article Nine require that the parties take four steps to create a valid and enforceable security interest:

. . . . . .

All of the foregoing steps may not occur simultaneously, but once all have occurred a valid Article Nine security interest, enforceable at least against the debtor, comes into existence."

It is true that the above language from White & Summers refers to the code as written prior to the 1973 revision in Illinois on Article Nine; however, the language used in the 1973 Illinois revision was not materially different from the prior wording and the purpose underlying § 9–203 which led to the foregoing comments remained the same.

It is important to note that appellant is not alleging fraud, mutual mistake or undue influence as a reason for requesting that this Court hold the security interest invalid. Rather, appellant contends only that the signing came before the writing of the description of the collateral. Such an allegation is at best a technical defense if it is a defense at all.

The Uniform Commercial Code Comment following § 9–203 in Chapter 26, Illinois Revised Statutes, 1973, discusses the purposes underlying § 9–203 and states the following:

"Subsection (1) states three basic prerequisites to the existence of a security interest: agreement, value, and collateral. In addition, the agreement must be in writing unless the collateral is in the possession of the secured party . . . When all of these elements exist, the security agreement becomes enforceable between the parties and is said to 'attach'.

. . . . . .

3. One purpose of the formal requisites stated in subsection (1)(a) is evidentiary. The requirement of written record minimizes the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured."

The fact that the primary reason for requiring a written memorandum is evidentiary and the fact that in the instant case a description of the collateral was subsequently written in the agreement so that it accurately reflected the intent of both parties, leads this Court to conclude that upon completion of the requirements in § 9–203 a valid and enforceable security interest was created.

If appellant's interpretation of the law were correct and signing the security agreement had to be the final act in

creating the security interest, then it would have been logical for the legislature to place the signing requirement under subsection (c), of § 9–203(1) rather than under subsection (a), which is prior to the requirement in (b) that value be given and the requirement in (c) that the debtor have rights in the collateral.

The real question in cases such as the present must necessarily become whether the various requirements for creation of a security interest have been completed and not whether the requirements have been completed in any particular order.

For example, two parties could enter into a security agreement that contained a proper description of the collateral and a valid signature of the debtor, value could have been given, but, if the debtor had no rights in the collateral there would be no security interest until such rights were acquired. As stated in Illinois Revised Statutes, Chapter 26, § 9–203(2):

> "A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching."

Appellant cites Cheatem v. Cook, 8 Ill. App.3rd 425, 290 N.E.2d 707 (1972), for the proposition that a security agreement must contain a description of the collateral at the time the agreement is signed by the debtor. The language cited by appellant was merely dictum in the case and the facts involved were totally dissimilar to the case at bar.

The issue in *Cheatem* leading to the discussion of requisites for a security interest was whether the trial court erred in refusing to admit certain evidence which the appellant asserted would tend to establish that an insurance agency acted as defendant Cook's agent in directing a cancellation of his insurance policy. The basis for the trial court's holding was the best evidence rule. The appellate court affirmed the trial court

and also discussed the fact that the financing agreement did not, at the time it was signed by Cook, contain the name of the insurance company through which Cook was to be insured.

It is important to point out that in *Cheatem* the Court seemed to be confused in their use of the terms "financing agreement" and "security agreement", which makes the significance of their dictum even more questionable.

Based on the foregoing reasons,

It is hereby ordered that the order entered by the Bankruptcy Judge on November 27, 1974, ordering the Trustee to pay to Harrisburg Production Credit Association certain sums of money, be, and the same is hereby, affirmed.