Richard W. MEANS et ux., Appellants,

v.

UNITED FIDELITY LIFE INSURANCE COMPANY et al., Appellees.

No. 6551.

Court of Civil Appeals of Texas, El Paso.

March 23, 1977.

Rehearing Denied April 20, 1977.

Walker F. Means, Pyote, Ed Keys, Monahans, for appellants.

L. Holt Magee, Monahans, John R. Lee, Kermit, for appellees.

## OPINION

WARD, Justice.

The Plaintiffs, Richard W. Means and wife, Ida G. Means, filed suit against Defendants, United Fidelity Life Insurance Company, Manuel DeBusk, and R. D. Skelton, Trustee, to recover the title and possession of an alleged 200-acre rural homestead, to declare the invalidity of two trustee's sales insofar as they might affect the 200-acre homestead, to declare the invalidity of two security agreements purporting to cover certain horses and personal property, and to recover certain amounts as actual and exemplary damages. United Fidelity Life Insurance Company and Manuel DeBusk, by cross-action, sought to recover title and possession of three tracts of land, one of which included the 200-acre disputed homestead, monetary judgment, and foreclosure of security interest in the horses and personal property. After a jury trial, where special issues were answered in favor of all Defendants and Cross-Plaintiffs, judgment was entered that the Plaintiffs take nothing and that the Cross-Plaintiffs recover on their claims. Plaintiffs appeal and we affirm.

The facts regarding the dispute between the Plaintiffs and United Fidelity Life Insurance Company will be discussed first.

The surfaces of three tracts of land were acquired by the Plaintiffs and are involved in the suit, and they are referred to on certain of the exhibits as tracts I, IA, and II. Tract I contains 154.77 acres, and tract IA contains 324 acres, and both are a portion of Survey 20 and were deeded to the Plaintiffs by Mr. Means' father. No claim of homestead was asserted by the Plaintiffs at this trial as to any portion of these two tracts.

The claim of the alleged 200-acre rural homestead was made as to tract II. This tract II, which lies in a portion of section 19, contains 322.59 acres and was conveyed on March 8, 1969, to the Plaintiffs. The grantors in that deed retained a vendor's lien, together with a deed of trust lien, to secure the balance of $7,000.00 owed on the purchase price, that being evidenced by a promissory note of even date in said amount and signed by the Plaintiffs. In May, 1971, this note, together with the vendor's lien and deed of trust liens, was sold and assigned by those original grantors to the First Savings and Loan Association of Odessa, the sum of $6,383.00 being still owed on the note at the time of this transfer.

During the next two years, the Plaintiffs executed three successive mechanic's lien notes in the amounts of $4,356.00, $7,878.96, and $18,000.00, each being for the purpose of erecting permanent improvements on tract II, and all being secured by respective mechanic's and materialman's liens on tract II. All of these notes and liens were eventually transferred to the First Savings and Loan Association of Odessa, where on March 17, 1972, a new extension and renewal note was executed in the principal amount of $25,000.00 by the Plaintiffs, the same being secured by a deed of trust which was made in renewal and extension of all of the four previous liens secured by tract II and being additionally secured by tracts I and IA. The validity of this $25,-000.00 indebtedness and its security has not been questioned by the Plaintiffs.

The Plaintiffs next applied to First City Mortgage Company of Dallas for a new loan and proposed to mortgage all of the real estate. In preparing for the loan, they filed of record a designation of their homestead as being on a 1-acre tract containing a stucco house on tract IA, although the evidence was to the effect that they had never moved from their homestead located in the south portion of tract II. Regardless, a loan of $75,000.00 was secured, the promissory note in that amount being executed July 20, 1972. Although this note was supposed to be secured by deed of trust on all three tracts excluding the so-called 1-acre homestead designation on tract IA, all of tract IA was excluded by mistake from the deed of trust. However, tracts I and II were in the deed of trust, and it was this note of $75,000.00 and this deed of trust lien which were thereafter transferred to the Defendant, United Fidelity Life Insurance Company. As shown by the admissions of the Plaintiff Means and the closing statement made at the time of this last loan, the sum of $26,057.02 was advanced from the proceeds of the loan at the request of the Plaintiffs to pay the balance of principal and interest then owing on the $25,000.00 note held by the First Savings and Loan Association of Odessa. After this payment, and after the execution of the deed of trust of $75,000.00, First Savings apparently did not transfer its liens but executed a release, though this is not of record.

Default thereafter occurred in the payment of the $75,000.00 note, as no payment was ever made thereon, and on May 7, 1974, Lawrence L. Barber, Jr., acting as substitute trustee and under the terms of the deed of trust, sold the said tracts I and II at trustee's sale to the Defendant, United Fidelity Life Insurance Company, at their authorized bid of $56,250.00.

No special issues were submitted to the jury regarding any of the facts between the Plaintiffs and United Fidelity, except the jury did determine that the reasonable cash market value of all the land on May 7, 1974, was $63,000.00. However, in its judgment, the trial Court made certain findings which were to the effect that: (1) the rural home-

stead of the Plaintiffs was situated on the southwest 200 acres of tract II on July 20, 1972; (2) the Defendant, United Fidelity Life Insurance Company, is subrogated to all the rights of the First Savings and Loan Association of Odessa by reason of the payment to such Association of the sum of $26,057.02 on July 20, 1972, at the special instance and request of the Plaintiffs, and is subrogated to the valid lien against the southwest 200 acres in tract II; (3) on July 20, 1972, tract IA was omitted from the deed of trust executed by the Plaintiffs for the benefit of the Defendant, United Fidelity Life Insurance Company, due to a unilateral mistake on the part of United Fidelity Life Insurance Company; (4) the foreclosure of tracts I and II had by Lawrence L. Barber, Jr., substitute trustee, and sold to the Defendant, United Fidelity Life Insurance Company, was a valid foreclosure, and the Plaintiffs are entitled to a credit of $56,250.00 bid at such sale; and (5) on May 7, 1974, the Plaintiffs were indebted to the Defendant, United Fidelity, on the note in the principal sum of $75,000.00, interest in the amount of $12,488.85, attorney's fees in the amount of $8,748.88, for a total of $96,-237.73, less the credit of $56,250.00, leaving a balance due on May 7, 1974, in the amount of $39,987.73, with interest on said balance due from May 7, 1974, to January 2, 1976, of $6,621.55.

The decretal portion of the judgment as far as United Fidelity Life is concerned was to the effect that: (1) Plaintiffs take nothing; (2) the Cross-Plaintiff, United Fidelity Life Insurance Company, recover title and possession of tracts I and II, which would include the title and possession of the claimed homestead; and (3) the Cross-Plaintiff, United Fidelity Life Insurance Company, have judgment against the Cross-Defendants, Mr. and Mrs. Means, in the sum of $37,860.40, with interest from the date of judgment of January 19, 1976, at the rate of eight percent per annum, attorney's fees in the amount of $8,748.88, and for costs of suit.

As to the facts regarding the dispute between the Plaintiffs and Manuel DeBusk,

we find that in August, 1973, the Plaintiffs executed and delivered a $15,000.00 note payable to the order of the Winkler County State Bank, the note being secured by a deed of trust lien and a certain security agreement, and the deed of trust covering tract IA. At the time of executing the note and deed of trust, the Appellants also signed a security agreement in blank which was thereafter dated September 20, 1973, and filled in by the Defendant, R. D. Skelton, who was employed at the Winkler County State Bank. The security appears as "27 Seven Apaloosa Horses including but not limited to: Equal's Bob song, Equal Leo, Patsy's Sugar, Last Hope, Equal Esta, Equal Judy, Stride's Sugar Babe, Goldberg, and all increases thereof, Machinery, Equipment."

On December 26, 1973, Means borrowed an additional $5,000.00 from the Winkler County State Bank, executed a promissory note therefor, securing the same by an additional security agreement which he executed in blank, but which appears to cover livestock, horses, and equipment, plus any and all increases thereof. The authority of Mr. Skelton to include the horses in the security agreements of September 20th and December 26th became a disputed issue in the case.

On May 30, 1974, the promissory note for $15,000.00 and the one for $5,000.00, the deed of trust lien securing the first note covering tract IA, and the two security agreements were transferred and conveyed to Manuel DeBusk. The two notes being in default, on July 2, 1974, a trustee's sale was conducted by R. D. Skelton as trustee under the deed of trust, and tract IA was sold at the trustee's sale to Manuel DeBusk, the consideration in the trustee's deed being recited at $40,000.00. On May 28, 1975, R. D. Skelton executed a trustee's correction deed regarding this last described trustee's sale, and recited that the $40,000.00 figure was inserted in the deed by inadvertence and was error, and that the true consideration was $14,000.00 cash. The amount of the consideration also became a disputed issue in the case.

On August 5, 1974, having accelerated the last two promissory notes, DeBusk executed a notice to Means to assemble collateral and called upon him to produce the Apaloosa horses, the increase thereof, and the machinery and equipment previously secured.

Upon the trial, the jury, by their answers to the special issues submitted, determined that Mr. Means authorized Skelton to include the horses in the security agreements of September 20th and December 26th, 1973; failed to find that Ida Means authorized the inclusion of the horses; found that Skelton bid for DeBusk at the trustee's sale of July 2, 1974, for tract IA the sum of $14,000.00 in cash; answered "no" to the question that DeBusk, by asserting a claim on the Plaintiffs' horses effective August 5, 1974, had damaged the Plaintiffs in their horse business; and determined that the reasonable cash market value of tracts I, IA, and II on May 7, 1974, was the sum of $63,000.00.

As to the DeBusk dispute, the trial Court in its judgment recited that: (1) the Winkler County State Bank held a first and valid lien against tract IA, and a first and valid security interest lien against the 27 Appaloosa horses, including the eight previously named and all increases thereof; (2) Manuel DeBusk purchased said note and lien from the Winkler County State Bank and was the owner of the same on July 2, 1974; (3) the foreclosure had by Skelton, trustee, on behalf of DeBusk on July 2, 1974, was a valid foreclosure on tract IA, and Mr. and Mrs. Means were entitled to a credit in the amount of $14,000.00 at such sale; (4) DeBusk is entitled to foreclosure of his security interest lien on all the horses, equipment, and chattels; (5) the Plaintiffs were entitled to no damages against DeBusk; and (6) the Plaintiffs were indebted to DeBusk on July 2, 1974, on the principal of the notes in the amount of $20,000.00, with interest to such date in the amount of $1,554.05, and attorney's fees in the amount of $2,155.40, for a total of $23,709.45, less a credit of $14,000.00, leaving a balance due of $9,709.45, with interest on said sum from July 2, 1974, to January 2, 1976, in the amount of $1,456.50

The decretal portion of the judgment as far as DeBusk is concerned was to the effect that: (1) Plaintiffs take nothing; (2) Cross-Plaintiff DeBusk have judgment against the Cross-Defendants, Mr. and Mrs. Means, in the sum of $9,110.55, with interest thereon from date of judgment at the rate of eight percent per annum, attorney's fees in the amount of $2,155.40, and for costs of suit; and (3) Cross-Plaintiff DeBusk recover title and possession to tract IA and have foreclosure of his security interest in the horses previously described.

■ Motions for summary judgment were filed by both Plaintiffs and Defendants and argued to the trial Court several weeks before the trial, and no order was made thereon either denying them or granting them in whole or in part. The Plaintiffs' first two points assert trial Court error in not ruling on their motion for summary judgment prior to trial, and at least in not making an order specifying ahead of trial that the 200-acre homestead in tract II was the Plaintiffs' homestead, and in not determining at that time that tract IA was omitted from the July 20, 1972 deed of trust due to the unilateral mistake of United Fidelity Life Insurance Company. Plaintiffs argue that testimony regarding their false or mistaken designation of homestead as being in tract IA, and the circumstances surrounding the omission of tract IA from the deed of trust of July 20, 1972, due to the unilateral mistake of United Fidelity, prejudiced the Plaintiffs in the eyes of the jury; that the trial Court should have ruled in the Plaintiffs' favor at the time of the hearing on their motion for summary judgment, and if it had, such testimony would then not have been admissible before the jury. The failure to rule presents no error as, at the time of the hearing, the Court was unable to conclude that either movant had shown conclusively a right to even a partial summary judgment. The summary judgment proof on behalf of the homestead claim consisted of affidavits and testimony of the interested parties. The question of intent

was involved; the evidence was conflicting and contradictory; the fact that both parties moved for summary judgment did not abolish the duty of the trial Court to determine whether fact issues existed; and if the Court had ruled, it should have entered an order denying both motions completely. No error is presented. 4 McDonald, Texas Civil Practice, Sec. 17.26.8(iii) at 155; Sec. 17.26.12 at 177 (1971).

■ During both the discovery process and at the presentation of the Plaintiffs' case, evidence was developed that out of the proceeds of the $75,000.00 loan the sum of $26,057.02 was advanced to pay off the previous note held by First Savings and Loan Association of Odessa. When the Plaintiffs rested, United Fidelity was permitted to file a trial amendment setting up that it had become subrogated to the rights of First Savings and Loan Association, and that the valid lien as to the claimed homestead tract had passed to it by the subrogation. At that time, the Plaintiffs claimed surprise and asserted that the trial Court abused its discretion in permitting the trial amendment. It is noted that at the time, the Court questioned the Plaintiffs' attorneys as to their desire for withdrawal of their announcement of ready, but that the Plaintiffs' attorneys, while announcing that they were claiming surprise, also stated that they were ready to proceed with the trial. We find no abuse of discretion under the circumstances and the point advanced is overruled. Rule 66, Tex.R.Civ.P.; *Home Indemnity Company v. Draper*, 504 S.W.2d 570 at 577 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.); 2 McDonald, Texas Civil Practice, Sec. 8.07 at 334 (1970).

■ By a series of combined points, the Plaintiffs next attack the trial Court's action in permitting the foreclosure of their 200-acre rural homestead and holding it valid by reason of United Fidelity Life being subrogated to the rights under the valid deed of trust lien of First Savings and Loan Association of Odessa, the Plaintiffs asserting that the said Defendant had not proven that the deed of trust lien of First Savings and Loan Association of Odessa had contin-

ued to be a valid and subsisting lien, and that actually First Savings and Loan Association released its lien on July 27, 1972. While the release is not of record, assertions to that effect are repeatedly made by the Plaintiff-Appellants, and have not been challenged by any of the Appellees. Whether we accept the assertions as establishing the facts or whether we assume the release to have been executed, United Fidelity still acquired a lien superior to the homestead rights of the Plaintiffs in the 200-acre part of tract II. As previously pointed out, the $25,000.00 note held by First Savings and Loan Association of Odessa and its underlying security was valid and superior to the homestead interest of the Plaintiffs. At the request of the Plaintiffs, $26,057.02 of the proceeds of the $75,000.00 loan was advanced to pay off the principal and interest then owing on the $25,000.00 note. Further, the deed of trust securing the $75,000.00 note provides as follows:

"4. The proceeds of the Note to the extent that the same are utilized to take up any outstanding liens against the Mortgaged Premises, or any portion thereof, have been advanced by the Noteholder at Grantors' request and upon Grantors' representation that such amounts are due and are secured by valid liens against the Mortgaged Premises. The Noteholders shall be subrogated to any and all rights, superior titles, liens, and equities owned or claimed by any owner or holder of any outstanding liens and debts, however remote, regardless of whether said liens or debts are acquired by the Noteholder by assignment or are released by the holder thereof upon payment."

■ Subrogation may arise from the agreement of the parties or by implication and equity to prevent fraud or injustice; it is a doctrine of equity, a substitution of another person in the place of the creditor so that the person in whose favor it is applied succeeds to the right of the creditor in relation to the debt. These general principles were expressed in *Platte v. Securities*

*Inv. Co.*, 55 S.W.2d 551 (Tex.Com.App.1932). Where subrogation arises, it makes no difference whether the party, on the payment of the money, took an assignment of the mortgage or a release, or whether a discharge was made and the evidence of the debt cancelled. *Kone v. Harper*, 297 S.W. 294 at 297 (Tex.Civ.App.—Waco 1927), aff'd *Ward-Harrison Co. v. Kone*, 1 S.W.2d 857 (Tex.Com.App.1928). Whether we have a purely equitable subrogation or, as here, a purely contractual one where both Mr. and Mrs. Means agreed to the subrogation, the principles are the same, and the rights of United Fidelity Life Insurance Company after the payment were superior to the homestead rights of Mr. and Mrs. Means in that tract. This same result would have been reached from a purely equitable subrogation, as occurred in the case of *Lewis v. Investors Savings Association*, 411 S.W.2d 794 (Tex.Civ.App.—Fort Worth 1967, no writ). The principle is that one not a volunteer who advances money to pay a valid encumbrance on a homestead, under circumstances from which an understanding is to be implied that at least a part of the advancement made is to be secured by a first lien on the land encumbered, is subrogated to the rights of the prior encumbrancer under his security, unless superior or equal equities of others would be prejudiced thereby. See also 28 Tex.Jur.2d Homesteads, Secs. 95 and 161 (1961).

■ In connection with the foreclosure of the Plaintiffs' 200-acre rural homestead, Plaintiffs next complain that it was an unauthorized foreclosure because it was made without adjusting the equities that existed in the Plaintiffs' favor. We overrule the point.

■ Regardless of who had the burden of proof, the Defendants introduced the testimony of a real estate appraiser who gave his opinion that on May 7, 1974, the reasonable market value of the land, exclusive of improvements in tract II, was $35.00 an acre, and that the improvements which were on the claimed 200-acre portion were reasonably valued at an additional sum of $20,750.00, thus making the total reasonable market value of the 200-acre homestead at $27,750.00. This would have been a sum less than the amount then due and owing on the note, which was secured by a lien prior and superior to the homestead claim. As previously stated, the trustee sold tracts I and II on May 7th for $56,250.00, and at that sale the Plaintiffs were represented by one of their attorneys who merely observed the proceedings. The Plaintiffs made no objection to the sale, made no effort to require the trustee to sell the non-exempt property before offering the homestead tract, and have raised no complaint in that respect at this time. By failing to make such a demand at the time of the sale and by permitting the property to be sold in bulk, the Plaintiffs waived any right to require segregation. *Price v. McAnelly*, 287 S.W. 77 (Tex.Civ.App.—San Antonio 1926, writ dism'd).

■ Using additional testimony of the Defendants' real estate appraiser, the Plaintiffs argue that the sale of the unsegregated homestead property brought more than the legal debt properly chargeable against the homestead tract. Pleadings aside, they have secured no such jury findings. The only relevant jury finding is the one that the value of the three tracts on May 7th was $63,000.00, and there is no way to determine from that the part attributable to the homestead. Further, at no time have the Plaintiffs tendered the part of the debt properly charged as a lien against the 200 acres. The fact that the debt secured by the mortgage against the homestead tract might have been in excess of the amount properly chargeable against the property does not affect the validity of the trustee's sale. To have avoided such a sale, the Plaintiffs should have tendered the amount of the debt legally chargeable against the homestead before the sale of the mortgaged property, and if that tender had been rejected, then the Plaintiffs should have restrained the sale until the equities were adjusted. Having failed in that regard, they have also failed in the present proceedings to plead or secure any findings where the equities could have been adjusted.

**310** 

Lewis v. Investors Savings Association, supra, at 798; Price v. McAnelly, supra, at 81.

 The Plaintiffs next assert that DeBusk was not entitled to have foreclosure of any security interest in the horses. The evidence was to the effect that the two security agreements were executed in blank by Mr. and Mrs. Means at the Winkler County State Bank; that Mr. Means authorized Mr. Skelton to put the horses in the security agreement; and that the horses were then listed on the security agreement as they were given to Skelton by Mr. Means. This was a disputed issue, and the jury found that Means authorized Skelton to include the horses in the two instruments. The jury failed to find that Mrs. Means authorized the inclusion. The authorization by the husband was sufficient. We notice that as to commercial paper, if it is signed while incomplete, it can be enforced as completed, if it is completed in accord with the authority given. We find no authority which would prohibit the same ruling as to the security interest in the horses. See Sec. 3.115 Tex.Bus. & Comm.Code Ann.; 15 Am.Jur.2d Sec. 497 (1976). Means testified that he still had possession of the horses, with the exception of some that had died, and he described their location. We see no error in the foreclosure of the horses.

The Plaintiffs complain of the description in the security agreement of December 26th where the words "livestock" and "equipment" were used. We fail to find where the Court ordered foreclosure of livestock and equipment and that point is also overruled.

 The Plaintiffs next assert that the recital in the trustee's deed to DeBusk that the consideration was $40,000.00 was binding on DeBusk. The evidence was to the effect that the insertion of $40,000.00 was done by mistake and that the true consideration was $14,000.00. The point is overruled. The principles of estoppel by deed generally do not apply to the recitation of the amount of consideration. 28 Am.Jur.2d Estoppel and Waiver, Sec. 24 (1966). As to any equitable estoppel, neither facts nor jury findings are present.

The recital of the consideration, not being of a contractual nature, could be explained and the real consideration shown. 19 Tex. Jur.2d Deeds, Sec. 55 (1960).

As to the jury's failure to find that DeBusk damaged the horse business of the Plaintiffs, the Plaintiffs advance both "no evidence" and "great weight" points. In regard to the "no evidence" points, we have considered only the evidence tending to support the findings, and those points are overruled. Insofar as the points complain of the finding being against the great weight and preponderance of the evidence, we have considered all of the evidence, and those points are also overruled.

Having considered all of the Appellants' points, and having overruled them, the judgment of the trial Court is affirmed.