In the Matter of Robert August METZLER, Sr., d/b/a Birmingham Occasional Furniture and Modern Home Furniture, a/k/a Robert A. Metzler, Sr., Bankrupt.

**SEMCO DIVISION, DELWOOD FURNITURE COMPANY, INC., Plaintiff,**

v.

**C. Crawford WILLIAMS, Trustee of the Bankruptcy Estate of Robert August Metzler, Sr., et al., Defendant.**

Civ. A. No. 75–A–844–S.

United States District Court, N. D. Alabama, S. D.

Dec. 2, 1975.

Richard F. Dominick, Birmingham, Ala., for the bankrupt.

Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for plaintiff.

Denaburg, Schoel, Myerson & Ogle, Birmingham, Ala., for the trustee.

## OPINION AND ORDER

ALLGOOD, Senior District Judge.

In August 1974, Robert A. Metzler, Sr. was engaged in the operation of a manufacturing wholesale chrome and glass furniture business under the trade name of Birmingham Occasional Furniture Company. He had been purchasing chrome plated tubular products from the Semco Division, Delwood Furniture Company, Inc., prior to February 1974, and had become in arrears with his account to the point that Semco refused further credit unless he gave security. A written Security Agreement was entered into between the parties under the date of August 29, 1974, signed Birmingham Occasional Furniture Company by Robert A. Metzler, Sr., and Semco Division, Delwood Furniture Company, Inc., covering

"All machinery, equipment and inventory maintained in the conduct of the debtor's business to include but not limited to the list attached and all accessories now existing or hereafter acquired. All account now existing or hereafter created."

On September 3, 1974, a financing statement was filed giving the debtor's name and business as Birmingham Occa-sional Furniture Company, 816 19th Street North, Birmingham, Alabama 35203, covering the same description as above.

A separate financing statement was filed the same day in the name of Modern Home Furnishings, Forestdale Square Mall, Birmingham, Alabama, covering the same description, to-wit:

"All machinery, equipment and inventory maintained in the conduct of the debtor's business to include but not limited to the attached list and all accessories now existing or hereafter acquired. All account now existing or hereafter created."

A third Financing statement was taken and filed covering the same description but executed by Metzler, Robert A. Sr., DBA Birmingham Occasional Furniture Company.

Robert A. Metzler, Sr., also operated a retail sales business at Forestdale Mall where he sold furniture manufactured by Birmingham Occasional Furniture Company and furniture purchased from other sources and from other creditors. This business was known as Modern Home Furniture and was a general retail furniture business.

The Security Agreement was executed only by Robert A. Metzler, Sr., d/b/a Birmingham Occasional Furniture Company, the wholesale business, and made no reference to the retail business operated by the same individual as Modern Home Furniture in the Forestdale Square Mall.

The description in the security agreement made reference to "All machinery, equipment and inventory maintained in the *conduct of the debtor's business.* . . . . . . . . . ."

The Trustee contends that the debtor's business means the Birmingham Occasional Furniture Company which is the only business referred to and which was the manufacturing business with which both the debtor and Semco were concerned.

If the Trustee was alone in this contention, less weight would be given to it.

However, the debtor supports the Trustee and lends credence to the position that no specific reference was made to the inventory at the retail store because it was not intended to be included and there was no agreement or intent to include the retail stock. Mr. Metzler testified to this effect.

From the Transcript, April 16, 1975:

Page 30

Q (Mr. Schoel) What was your understanding of the transaction?

A (Mr. Metzler) Well, I had spoke with Jim and this was done at Birmingham Occasional Furniture, that under the circumstances, Southeastern Metals or Semco Division had the major portion or was owed the major portion of what I had at Birmingham Occasional Furniture and that I was willing to give them this agreement because of this fact. And included in that was machinery in that that I owned myself and nobody else had any liens or anything against that, note against them with the exception maybe of some glass and some cardboard boxes.

Page 31

Q Now, what was your understanding as to the furniture and items of merchandise located at Modern Home Furnishing?

A Well, the reason Modern Home Furniture entered into it at all, as far as I was concerned, was I took Jim and another gentleman from Semco out to Modern Home Furniture and showed them what I had out there and the possibilities that I had or the potential that I had of repaying the monies that I owed. And this would be in work, as part of, you know, my potential of paying my debt.

Q All right. Was it your understanding that you were going to give them a security interest in those items and that merchandise located at Modern Home?

Mr. Taliaferro: We object to leading the witness.

A No, sir.

The Court: All right. Don't lead the witness.

Q Okay. What was your understanding as to what merchandise at what location was going to pass under the security interest?

Page 32

A Well, that was the list of inventory that I had made out at this time.

The Court: I am going to sustain the objection to that. I think that's up to the Court to determine the legal effect.

Mr. Schoel: All right. You are right about that.

Q Whose debt or what business debt was being secured by this security interest?

A Birmingham Occasional Furniture.

Q And was that a debt that was owed prior to the execution of the security interest?

A Yes, sir, it was.

Q Or the security agreement?

A Yes, sir.

Q Was there any debt owed at that time by Modern Home Furnishings to Semco for any purchases it had made?

A No, sir.

The description refers to a *list attached* which tends to support the Trustee's position that the Security Agreement was limited to furniture manufactured by Birmingham Occasional Furniture Company and excluded inventory purchased from other manufacturers, which the debtor felt was unrelated to his debt to Semco.

Robert A. Metzler, Sr., filed voluntary bankruptcy on March 4, 1975, scheduling total debts of $51,230.94 including his debt of $12,312.00 due to Semco. Semco seized the inventory, equipment and machinery located at 816 North 19th Street shortly before bankruptcy and removed the same to the Mini Warehouse at 6917 Madrid Avenue, Birmingham, Alabama.

On March 11, 1975, Semco filed reclamation petition in the following words:

"Comes SEMCO Division, Delwood Furniture Company, Inc., and moves the

court for an order commanding the receiver and/or trustee in the abovestyled case to turn over to SEMCO Division, Delwood Furniture Company, Inc., all machinery, equipment, and inventory of the bankrupt. SEMCO Division, Delwood Furniture Company, Inc., claims this machinery, equipment, and inventory pursuant to the note and security agreement marked Exhibit "A" and attached hereto."

The Receiver, C. Crawford Williams, now the Trustee, filed answer denying the title and right to possession of Semco and filed answer and counterclaim setting up the invalidity of the lien of Semco under Alabama Uniform Commercial Code and that the transaction was void as a general assignment under Title 20, § 9 of the Code of Alabama with a prayer for general relief.

No evidence was offered as to the value of the inventory and property seized and held by Semco and the amount of credit to be given nor on the issue of the general assignment. Rather the matter was tried before the Bankruptcy Judge on the determination of what collateral was included in the Security Agreement.

Both sides concede that a financing statement is ineffective without a valid underlying Security Agreement. *In re L. B. Knight, Bankruptcy Ct. Decisions 173 (N.D.Ala. Dec. 28, 1973)*, Bankruptcy Judge Watson stated:

"A security agreement and financing statement serves entirely different purposes. One *creates* a security interest and the other, if properly filed, *perfects* the security interest against the rights of certain third parties." (Emphasis added).

It is fundamental that the Alabama Uniform Commercial Code deals with contractual or consensual liens, which can only be created by agreement of the parties. §§ 9–201 and 9–203, Title 7A, Code of Alabama. The fundamental requirement of meeting of the minds is inherent in such agreements, as it is in all contracts. Without a contract there can be no security interest.

True the Court may look to financing statement to aid the Court in construing the contract, and the contract may be included in the financing statement. But the financing statement must be supported by the Security Agreement.

Robert A. Metzler, Sr., had two businesses. They appeared to be separate and distinct with a different name, a different type of business and a separate set of customers and creditors. He owned the assets in both businesses and was personally liable for all the debts. This did not prevent him from operating each business independently from the other, or from keeping separate books and inventories. Certainly he had the right to give a security interest to a single creditor on the assets at both stores. The burden is on the creditor to establish the intention to include the stock at Forestdale Mall. Did the parties intend to limit the description to the location of the Birmingham Occasional Furniture Company and to give a security interest in only that property? Metzler's testimony is to that effect.

The question is what did the debtor agree to do? Did he create a security interest in his stock at the Forestdale Square Mall to Semco? He testified that he did not. The Bankruptcy Judge found that he did not and that finding seems to be supported by sufficient evidence for this Court not to overturn it.

The decision of the Bankruptcy Judge is affirmed.