Christine Callis appeals from a summary judgment in favor of Colonial Properties, Inc. ("Colonial"), and Colonial appeals from judgment based on a directed verdict in favor of Bobby and Patricia Spurlock. Both appeals involve agreements by Callis and Spurlock with Colonial to lease from Colonial spaces in a shopping center known as McGehee Place, in Montgomery, Alabama.
Callis contends that she should be allowed to rescind her lease with Colonial because, she argues, she was fraudulently induced to sign the lease agreement. She contends that she expressed to a representative of Colonial a desire to be located in a shopping center that would attract a wealthy clientele. She further contends that she was assured that there would be no "discount" stores in the shopping center and that a men's store would be located near the location of her store within the center. Callis argues that she relied on these representations in signing the lease, and, therefore, she argues, she should be *Page 661 
entitled to rescind the lease, because, she says, neither of the representations proved to be true. In considering her argument, we note that the lease in question contains the following provision:
 "This Lease and the schedules, rider and/or addends [sic], if any, attached, contain all covenants and agreements between Landlord and Tenant relating in any manner to the rental, use and occupancy of the Premises and the other matters set forth in this Lease. No prior agreement or understanding pertaining to the same shall be valid or of any force or effect; and, the covenants and agreements of this Lease cannot be altered, changed, modified or added to, except in writing signed by Landlord and Tenant. No representation, inducement, understanding or anything of any nature whatsoever made, stated or represented on Landlord's behalf, either orally or in writing (except this Lease), has induced Tenant to enter into this Lease. The submission of this document for examination does not constitute an offer to Lease, or a reservation of an option for the Premises, and this Lease becomes effective only upon execution and delivery thereof by Landlord and Tenant."
(Emphasis added.) The language in the lease signed by Callis states that only the representations in the lease itself induced her to enter into the agreement. Callis was presented with a copy of the lease agreement, and she even requested several changes in the lease, none of which had to do with the provision in question. The trial court did not err in entering the summary judgment as to her fraud and misrepresentation claim.
Callis further contends that Colonial breached certain provisions in the lease agreement. One of those provisions is set forth below:
 "Tenant will not conduct any auction, distress, fire, bankruptcy, 'going-out-of-business' sale, and shall not conduct or permit the type of business commonly called a 'discount house or store,' surplus store, secondhand store, temporary outlet or any similar business or activity."
(Emphasis added.) Although Callis argues that Colonial breached this clause in the agreement by leasing space to "discount" stores, we note that the lease states that the tenant shall not conduct the specified activities. Nothing in the clause indicates that Colonial would be barred from renting space to whomever it wished, regardless of the business involved. Callis mentions a schedule that was attached to the lease agreement, and which indicates that a men's store would be located in the shopping center. Again, Callis failed to take note of the following statement on the schedule:
 "This exhibit is diagrammatic and is intended only for the purpose of indicating the location of the demised premises in the project. . . ."
We find no merit in her argument that Colonial breached the lease.
In its cross-appeal, Colonial contends that the trial court erred in directing a verdict in favor of the Spurlocks. The lease agreement signed by the Spurlocks contains the following provision:
 "[T]his Lease becomes effective only upon execution and delivery thereof by Landlord and Tenant."
(Emphasis added.) It is undisputed that the Spurlocks signed the lease and sent it to Colonial. Colonial, in turn, was to sign the lease and send a copy to the Spurlocks. The parties do not dispute the fact that Colonial's general practice is to execute four originals and to send one of those originals to the lessee. In this case, all four originals remained in Colonial's files. The Spurlocks contend that they never received either an original or a copy of the lease, even though they claim that they made several requests for a copy.
Despite the clause in the lease, Colonial argues that the Spurlocks accepted the benefits of a lease and paid rent pursuant to the lease for approximately one year. The trial court determined that, because a copy of the lease had never been delivered to the Spurlocks, the lease was ineffective and that the Spurlocks had been renting *Page 662 
space from Colonial on a month-to-month basis. We agree.
It is clear from the evidence in the record that Colonial overlooked delivery of the lease. The clause in the lease is unambiguous in stating that the lease is effective only upon delivery.
For the foregoing reasons, the judgments are affirmed.
1900711 — AFFIRMED.
1900732 — AFFIRMED.
MADDOX, HOUSTON and KENNEDY, JJ., concur.
ALMON and STEAGALL, JJ., concur specially.
HORNSBY, C.J., and SHORES and INGRAM, JJ., concur in part and dissent in part.