Farmer's Cooperative of Ashford (the "Co-op") sued People's Community Bank of Ashford (the "Bank"), alleging that the Bank had improperly received insurance proceeds and money from the sale of crops that, the Co-op alleges, should have been paid to it because of a security interest it claims in the crops. The Bank moved for a summary judgment, arguing that the Co-op had no enforceable security interest in, and therefore no priority to, any of the disputed crops or the proceeds of those crops. The trial court agreed and entered a summary judgment in favor of the Bank. *Page 821 
The Court of Civil Appeals reversed and remanded, holding that the evidence created a genuine issue of material fact as to the priority of the security interests. See Farmers Cooperative ofAshford, Inc. v. People's Community Bank of Ashford, 775 So.2d 817
(Ala.Civ.App. 1998). Because we hold that the Co-op did not establish an enforceable security interest in the crops, and, therefore, that the Co-op has no specific claim to the disputed proceeds, we reverse and remand.
 I.
In January 1996, the Bank lent Russell Jody Harper $150,000 for crop-production expenses. In return, Harper gave the Bank a security interest in certain collateral. Specifically, Harper signed a security agreement that described the collateral as:
 "All crops growing or to be grown by [Harper], including but not limited to 120 acres of Peanuts (251,178 Quota lbs.), all additional Peanuts, 365 acres of Cotton, Plus any and all other crops that may be grown by [Harper], also includes any UNDER MARKETING of Peanuts, also secured by all of the debtors [sic] farm equipment and for a more particular description see exhibit `B' attached, also secured by the debtors [sic] Real Estate, and for a more particular description see mortgage recorded in the office of the Probate Judge, Houston Co. Al., Book 1171, Page 095."
Based on that security agreement, the Bank filed a financing statement in the probate court. The financing statement described the collateral as:
 "All 1996 crops growing or to be grown by [Harper], including but not limited to 120 acres [of] peanuts (251,178 quota lbs.), all additionals, 365 acres of cotton and any and all other crops, also any unrer [sic] marketing, also assignment of any and all crop insurance, and for a more particular description of where the crops are to be grown see exhibit attached."
The Bank also filed a financing statement with the secretary of state. All three of these documents referenced farms 1996, 2002, 2014, 2058, 2121, 2139, and 2233 as the "more particular description of where the [collateral] crops are to be grown."
The Co-op alleges that in May 1996, in order to purchase soybean seed, fertilizer, and chemicals on "open accounts," Harper gave the Co-op a security interest in the crops grown on nine other farms. Harper, however, did not sign a security agreement, nor were any other documents produced that granted the Co-op a security interest in the crops. Nevertheless, the Co-op filed in the probate court a financing statement that represented that the Co-op had a security interest in the nine other farms. Specifically, the financing statement reads, in pertinent part,
 "The Financing Statement Covers the Following Types (or items) of Property: All crops grown by Russell J. Harper on the following farms: #1451, 1553, 1586 owned by Paula Lamp Ben Whitton, #1489 owner Hugh Fellows, #1838 owner Oris Harper, ##1984 [sic] owner E. L. Jerigan, #2011 owner Eddie B. Watford, #2036 owner Flouize Harrison, #2143 owner Basil Crooms."
Harper also signed and filed with H H Insurance Agency ("H H") an "Assignment of Indemnity" advising Cigna Property and Casualty Company that he was assigning to the Bank any rights and interest to any indemnity payment payable to him under an insurance policy covering his 1996 crops. Sometime later, the Co-op alleges, Harper asked an H H agent to obtain a release from the Bank for the nine farms identified in the financing statement regarding the assignment of the crop insurance so that the Co-op could be added in the Bank's place. The crop-insurance contract, however, was never amended, and it lists the Bank as the only loss payee.
In 1996, Harper sold some of his crops, apparently paying off part of his Bank loan *Page 822 
with some of the proceeds.[1] Harper also suffered crop losses that year and filed a claim with Cigna for his losses. After Cigna deducted unpaid premiums from the claimed losses, it issued a check made payable to both Harper and the Bank in the amount of $11,315.00. Harper endorsed the check over to the Bank.
In January 1997, the Co-op sued the Bank,[2] alleging that the Bank had improperly received money from the sale of crops and from insurance proceeds that, the Co-op alleges, should have been paid to the Co-op because of its alleged security interest. The Bank moved for a summary judgment, arguing that the Co-op had no enforceable security interest in, and no priority with respect to, any crops or proceeds of crops from any of Harper's farms. The trial court agreed and granted the Bank's motion for summary judgment. The Court of Civil Appeals reversed and remanded, holding that the evidence created a genuine issue of material fact as to the relative priorities of the security interests in the crops.
 II.
When reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard the trial court applies in ruling on the motion. See Ex parte Amoco Fabrics Fibers Co., 729 So.2d 336, 339 (Ala. 1998) (citing Ex parteLumpkin, 702 So.2d 462, 465 (Ala. 1997)). Thus, we must determine whether the evidence before the trial court created a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. See Rule 56(c)(3), Ala.R.Civ.P.; Bussey v. John Deere Co., 531 So.2d 860, 862
(Ala. 1988). "When the movant makes a prima facie showing that those two conditions have been satisfied, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact." Ex parte Amoco Fabrics Fibers Co., 729 So.2d at 339 (citing Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989)). "Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Id. at 339 (quoting West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)).
The Bank argues that the trial court correctly granted its motion for summary judgment because, it says, Harper did not sign a security agreement granting the Co-op a security interest in the disputed crops. Thus, the Bank concludes, the Co-op's alleged security interest was not enforceable and the Co-op had no right to the crops or to insurance proceeds. The Court of Civil Appeals did not address this issue, concluding instead that, because the Bank's security interest and the Co-op's security interest covered crops grown on different farms, there was a genuine issue of material fact as to the relative priorities of the security interests. See Farmers Cooperative of Ashford, 775 So.2d at 819. This distinction, however, is material only if the Co-op had a security interest in any of Harper's crops. If the Co-op had no security interest in any of the crops, then it has no specifically enforceable claim against the disputed proceeds and the trial court properly entered the summary judgment in favor of the Bank.
The enforceability of a security interest is governed by Ala. Code 1975, § 7-9-203, which in 1996 read as follows:
 "(1) Subject to the provisions of Section 7-4-210 on the security interest of a collecting bank, and Section 7-9-113 on a security interest arising under the article *Page 823 
on sales or the article on leases, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:
 "(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and
"(b) Value has been given; and
"(c) The debtor has rights in the collateral"
(Emphasis added.) Thus, a security interest is not enforceable unless (1) the debtor has signed a security agreement;[3] (2) value has been given; and (3) the debtor has rights in the collateral.
The Co-op presented no evidence indicating that Harper ever signed a security agreement.[4] The only evidence offered by the Co-op was a financing statement, signed by Harper, that the Co-op had filed in the probate court. A financing statement, however, is ineffective unless it is supported by a valid security agreement. See In re Metzler, 405 F. Supp. 622, 625 (N.D.Ala. 1975). "`A security agreement and financing statement serve
entirely different purposes. One creates a security interest and the other, if properly filed, perfects the security interest against the rights of certain third parties.'" Metzler,405 F. Supp. at 625 (quoting In re L.B. Knight, Bankruptcy Ct. Decisions 173 (N.D.Ala. Dec. 28, 1973)) (emphasis added in L.B. Knight). As the Supreme Court of Iowa has explained, "The cases uniformly hold that a financing statement does not ordinarily create a security interest. It merely gives notice that one is or may be claimed." Kaiser Aluminum Chemical Sales, Inc. v. Hurst,176 N.W.2d 166, 167 (Iowa 1970). While it is possible for a financing statement and a security agreement to be one and the same document, "[a] financing statement which does no more than meet the requirements of [Ala. Code 1975, § 7-9-402,] will not create a security interest in the debtor's property." Evans v. Everett,279 N.C. 352, 358, 183 S.E.2d 109, 113 (1971) (citing GeneralElec. Credit Corp. v. Bankers Commercial Corp., 244 Ark. 984,429 S.W.2d 60 (1968)). Although it is not necessary to use "magic words" in order to create a security interest, there must be evidence of the parties' intention to create a security interest. See Evans, 279 N.C. at 358, 183 S.E.2d at 113. Because there is no evidence in the record of a signed security agreement and because the financing statement does not evidence an intention to create a security interest,[5] the Co-op has no specifically enforceable claim against the disputed proceeds and the trial court properly entered the summary judgment in favor of the Bank.
 III.
The Court of Civil Appeals erred in reversing the Bank's summary judgment. Accordingly, we reverse the judgment of *Page 824 
the Court of Civil Appeals and remand the case to that court.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Houston, Cook, Lyons, Brown, Johnstone, and England, JJ., concur.
[1] It is unclear from the record how much money Harper realized from the sale of his crops, and the record gives no indication of how much of this money Harper applied toward paying off his bank loan.
[2] The Co-op also sued Harper and H H. However, the claims against those defendants are not presently before this Court.
[3] Section 7-9-203(1)(a) provides that the debtor need not sign a security agreement if the collateral is in the possession or control of the creditor. Here, because the crops were neither in the control or the possession of the Co-op, a security agreement was essential to the creation of a valid security interest.
[4] We note that "a separate formal document entitled `security agreement' is not always necessary to satisfy the signed-writing requirement of [U.C.C.] § 9-203(1)(b)." In reNumeric Corp., 485 F.2d 1328, 1331 (1st Cir. 1973). Instead, "[a] writing or writings, regardless of label, which adequately [describe] the collateral, [carry] the signature of the debtor, and [establish] that in fact a security interest was agreed upon, would satisfy both the formal requirements of the statute and the policies behind it." Id.
[5] The Co-op makes no arguments to this Court concerning this issue, apparently conceding that the financing statement was not intended to create a security interest.