THOMAS, Judge.
Alexis Jenkins (“Mrs. Jenkins”) sued State Farm Mutual Automobile Insurance Company and its agent, Mike Rives (collectively referred to as “State Farm”), asserting breach-of-contract, conversion, unjust-enrichment, and bad-faith claims arising out of State Farm’s refusal to pay her claim seeking reimbursement for loss-of-consortium damages under the uninsured/underinsured-motorist (“UIM”) provisions of her State Farm automobile insurance policy. The trial court entered a summary judgment in favor of State Farm. Mrs. Jenkins appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6).
Jenkins’s husband, Charles Jenkins (“Mr. Jenkins”), was injured in a two-car automobile accident on July 18, 2004; he was insured by a State Farm automobile insurance policy. The driver of the automobile that caused the accident, Victor Manuel Ramirez, was insured by Allstate Insurance Company. In February 2005, Mr. Jenkins sued Ramirez, alleging that Ramirez’s negligence and wantonness resulted in his injuries. Based on a letter from Ramirez’s attorney that appears in the record, on or before May 3, 2006, Mr. Jenkins agreed to settle his tort claims against Ramirez for Ramirez’s policy limits of $20,000.
A mere two days before the date reflected on the letter memorializing the apparent settlement of Mr. Jenkins’s claims against Ramirez, or on May 1, 2006, Mr. Jenkins, through his attorney, Rodney Caffey, notified State Farm by letter of his intent to seek UIM benefits under his policy. The letter stating that intent indicated that, included with the letter, was “the settlement demand package, which prompted [Ramirez’s insurer, Allstate] to tender their [sic] $20,000 dollar [sic] policy limits.” Correspondence between Caffey and State Farm (through various State Farm personnel) included in the record indicates that State Farm requested several additional items from Mr. Jenkins in order to evaluate the UIM claim; in addition, in a letter dated May 12, 2006, State Farm specifically instructed Mr. Jenkins not to accept any payment or sign any releases without first notifying State Farm. On August 20, 2006, Caffey notified State Farm that, if he did not hear from State Farm within 10 days, he would consider State Farm’s silence to be a refusal to pay under Mr. Jenkins’s insurance contract and that he would then add State Farm as a defendant to the pending action against Ramirez. State Farm apparently failed to respond, and Caffey amended Mr. Jenkins’s complaint against Ramirez to include State Farm as a defendant and to state both a breach-of-contract and a bad- *416 faith claim against State Farm in September 2006.
In October 2006, Jenkins and Ramirez filed a joint stipulation of dismissal, agreeing to a dismissal of the action against Ramirez with prejudice. Notably, however, State Farm was not a party to the joint stipulation. See Rule 41(a)(1)(h), Ala. R. Civ. P. (requiring that a stipulation of dismissal be signed by all parties who have appeared in the action). On October 4, 2006, State Farm notified Caffey that it still required certain medical and medical-expense records to conclude evaluation of Mr. Jenkins’s claim. The record contains a letter from Caffey dated March 12, 2007, indicating that he had made arrangements for a particular medical bill referred to in the October 2006 letter from State Farm to be forwarded by the medical provider directly to State Farm.
On August 31, 2007, Caffey wrote to State Farm again. In that letter, he advised State Farm that he represented Mrs. Jenkins and that she was seeking “full indemnification and reimbursement for all of her derivative State Farm Insurance first party coverages, relevant to the [accident on July 18, 2004].” The letter went on to say that, “[u]nless Mrs. Jenkins receives full compensation for her derivative UIM claim relevant to [the July 18, 2004, accident], she will have no choice but to litigate the matter.” State Farm denied Mrs. Jenkins’s claim, and she sued State Farm on September 21, 2007.
State Farm ultimately moved to dismiss Mrs. Jenkins’s claims. In its motion, State Farm argued that Mr. Jenkins had not notified State Farm of the settlement discussions between Mr. Jenkins and Ramirez and that State Farm had learned of the settlement only after the joint stipulation of dismissal with prejudice was “granted” by the trial court on October 26, 2006. See Rule 41(a)(2), Ala. R. Civ. P. (stating that, in situations other than those governed by Rule 41(a)(1), a plaintiff may seek a court order dismissing his or her action); but see Rule 41(a)(1)(h) (indicating that a dismissal by stipulation is accomplished without need of a court order). Thus, State Farm argued that Mr. Jenkins’s failure to notify State Farm of his intent to settle had impaired State Farm’s subrogation rights and had waived Mr. Jenkins’s rights to UIM benefits. See Lambert v. State Farm Mut. Auto. Ins. Co., 576 So.2d 160, 167 (Ala.1991) (setting out the procedure applicable to situations in which the rights of the insured and the rights of the UIM insurer conflict, which includes requiring the insured to notify the UIM insurer of any proposed settlement and its terms and the allowance of a reasonable time for the UIM insurer to investigate the UIM claim to determine its course of action). Further, State Farm argued that, because Mrs. Jenkins’s claim for loss of consortium was derivative of Mr. Jenkins’s claim against Ramirez, Mr. Jenkins’s dismissal with prejudice of his claims against Ramirez extinguished Mrs. Jenkins’s loss-of-consortium claim against Ramirez as well, leaving her no claim against Ramirez for which State Farm might owe UIM benefits. Finally, State Farm argued that Mrs. Jenkins failed to preserve State Farm’s subrogation rights regarding her claim (apparently by failing to notify State Farm of Mr. Jenkins’s settlement with Ramirez, which State Farm believes settled Mrs. Jenkins’s loss-of-consortium claim against Ramirez). State Farm attached what appears to be a facsimile from its litigation division that included a copy of Mr. Jenkins’s amended complaint and contained what appeared to be an internal memorandum indicating that the adjuster was awaiting receipt of certain reports and records necessary to evaluate Mr. Jenkins’s UIM claim.
In response to State Farm’s motion, Mrs. Jenkins argued that State Farm was *417 notified of the settlement discussions between Ramirez and Mr. Jenkins in a timely manner and that its loss of its subrogation interest was the result of its own neglect. Mrs. Jenkins also argued that neither she nor Mr. Jenkins had ever signed a release absolving any defendant of liability. Finally, Mrs. Jenkins argued that Ramirez’s statement to the police officer investigating the accident, which appeared in the accident report, established Ramirez’s fault and that Allstate’s tender of Ramirez’s policy limits fixed the extent of the damages, thus satisfying the burden imposed on her as a UIM claimant. See State Farm Mut. Auto. Ins. Co. v. Griffin, 51 Ala.App. 426, 431, 286 So.2d 302, 306 (Ala.Civ.App.1973) (defining the term “legally entitled to recover damages” and stating that “the insured must be able to establish fault on the part of the uninsured motorist, which gives rise to damages, and must be able to prove the extent of those damages. In a direct action by the insured against the insurei', the insured has the burden of proving in this regard that the other motorist was uninsured, legally liable for damage to the insured, and the amount of this liability.”); see also Le-Fevre v. Westberry, 590 So.2d 154, 157 (Ala.1991); and Quick v. State Farm Mut. Auto. Ins. Co., 429 So.2d 1033, 1035 (Ala.1983). Mrs. Jenkins attached to her response the letters between Caffey and State Farm; several pleadings from Mr. Jenkins’s case against Ramirez; letters between Caffey and Ramirez’s attorney regarding the settlement of Mr. Jenkins’s claim against Ramirez, which included two unsigned, releases; and the accident report relating to the July 18, 2004, accident.
The trial court entered judgment for State Farm, specifically relying on Mr. Jenkins’s failure to properly notify State Farm of his intent to settle his claims against Ramirez as required by Lambert. Further, the trial court concluded that Mrs. Jenkins’s claim, because it was derivative of Mr. Jenkins’s claim, was extinguished when Mr. Jenkins’s claim against Ramirez was voluntarily dismissed with prejudice. Based on this reasoning, the trial court concluded that Mrs. Jenkins had no claim to assert against Ramirez and therefore no UIM claim to assert against State Farm. Finally, the trial court concluded that Mrs. Jenkins had herself failed to preserve State Farm’s subro-gation rights against Ramirez.
As noted above, Mrs. Jenkins appeals from the judgment entered in favor of State Farm. Typically, when a party attaches external materials to support a motion to dismiss and those materials are considered by the trial court in disposing of the motion, we consider the motion to dismiss to have been converted into a Rule 56, Ala. R. Civ. P., summary-judgment motion. See Rule 12(b). Mrs. Jenkins also filed external materials in support of her response to State Farm’s motion. We will therefore review the trial court’s judgment under the summary-judgment standard. Boles v. Blackstock, 484 So.2d 1077 (Ala.1986).
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[Sjubstantial evidence is evi- *418 denee of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw. See Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000); and Fuqua v. Ingersoll-Rand Co., 591 So.2d 486, 487 (Ala.1991).
Although on appeal Mrs. Jenkins attacks the summary judgment by arguing that Mr. Jenkins gave proper notice of his decision to settle his claim against Ramirez to State Farm, we conclude, based on our de novo review, that the summary judgment should be reversed on another, more fundamental basis — the fact that the record does not establish that Mrs. Jenkins’s loss-of-consortium claim against Ramirez and her potential UIM claim against State Farm was extinguished by Mr. Jenkins’s settlement.[1] Although State Farm is correct that Mrs. Jenkins’s loss-of-consortium claim is a derivative claim that depends on the establishment of the tortfeasor’s liability to Mr. Jenkins, see Ex parte N.P., 676 So.2d 928, 930 (Ala.1996) (“Because a claim for loss of consortium is a derivative claim, a jury must find for a spouse asserting a loss of consortium if the jury finds against the defendant on the underlying claim, provided that the spouse claiming loss of consortium can prove damage to his or her marital interest resulting from the underlying wrongful act.”); see also Mattison v. Kirk, 497 So.2d 120, 123 (Ala.1986), overruled in part on other grounds by Carbon Hill Mfg., Inc. v. Moore, 602 So.2d 354, 356 (Ala.1992), and King v. National Spa and Pool Inst., Inc., 607 So.2d 1241, 1246 (Ala.1992) (“The wife’s right of recovery depends only upon a showing of liability on the part of third-party Defendants. To make her case, she simply must prove that her husband’s injury was caused by the Defendant’s wrongful acts and that, as a result, she lost her husband’s consortium from the time of the injury until his death.”), it is incorrect in its assumption that Mrs. Jenkins’s claim was extinguished by the settlement of Mr. Jenkins’s claim. Neither the record nor Alabama law supports that conclusion.
A loss-of-consortium claim is a derivative claim of a noninjured spouse, arising out of the injury to the injured spouse. Mattison, 497 So.2d at 123. However, a loss-of-consortium claim is considered to be a separate property right of the noninjured spouse. Emerson v. Southern Ry. Co., 404 So.2d 576, 580 (Ala.1981); see also Price v. Southern Ry. Co., 470 So.2d 1125, 1130 (Ala.1985) (stating, while explaining why a wife’s cause of action for loss of consortium did not abate upon the death of her husband, “[t]he cause of ac *419 tion belongs to her, and the loss is hers, not his. She has been deprived of her right of full marital participation with her husband because of the acts of the defendant.”). Because the noninjured spouse’s right is his or her independent right and a separate property right, the noninjured spouse is entitled “to pursue an independent cause of action on [his or] her own behalf.” Emerson, 404 So.2d at 580. Although our supreme court has recognized that a loss-of-consortium claim will typically be presented together with the claims of the injured spouse, Alabama law does not require that the claims be brought in the same action. Swartz v. United States Steel Corp., 293 Ala. 439, 445, 304 So.2d 881, 886 (1974).[2]
Mrs. Jenkins did not assert her loss-of-consortium claim in Mr. Jenkins’s action against Ramirez, so the possible release of Mr. Jenkins’s stated and unstated claims against Ramirez in conjunction with the settlement of Mr. Jenkins’s action against Ramirez would not necessarily have served to release Mrs. Jenkins’s claim. State Farm did not produce a signed release containing language that would release Ramirez from liability for Mrs. Jenkins’s loss-of-consortium claim; in fact, the record does not contain a signed release. Furthermore, although the dismissal of Mr. Jenkins’s claims could possibly have an effect on Mrs. Jenkins’s claim against Ramirez, see Mattison, 497 So.2d at 123 (noting that a loss-of-consortium recovery depends on the defendant’s liability for the injury to the spouse), the dismissal of those claims did not necessarily affect Mrs. Jenkins’s claim against State Farm. Thus, State Farm has not established that Mrs. Jenkins’s claim against State Farm was extinguished by the dismissal of Mr. Jenkins’s action against Ramirez or by the settlement and possible release of Mr. Jenkins’s claims against Ramirez.
We also disagree with the trial court’s conclusion that Mrs. Jenkins’s loss- *420 of-consortium claim is barred by any failure on the part of Mr. Jenkins to notify State Farm about the settlement of his negligence and wantonness claims against Ramirez; as noted above, Mrs. Jenkins’s loss-of-consortium claim is her independent claim and was not released by Mr. Jenkins’s settlement with and possible release of Ramirez. We are likewise unconvinced that Mrs. Jenkins has failed to preserve State Farm’s subrogation rights; the record does not reflect that Mrs. Jenkins’s loss-of-consortium claim was settled at any point, and, therefore, she did not fail to properly notify State Farm as required by Lambert. Accordingly, Mrs. Jenkins is entitled to pursue her claim seeking reimbursement under the UIM provisions of her policy for loss-of-consortium damages that she may establish in this action against State Farm.[3]
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, J., concur.
MOORE, J., concurs in the result, without writing.
BRYAN, J., dissents, with writing.

. The dissent argues that we cannot reverse the summary judgment on this basis because Mrs. Jenkins never made this exact argument to the trial court. 30 So.3d at 420. However, we cannot agree that the record does not contain material presenting the argument to the trial court. We base our reversal on our analysis of the exact argument presented to the trial court by State Farm in support of the motion for a summary judgment. Our de novo review of a summary judgment requires us to apply the same standard as that applied by the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala.1997). Thus, we reviewed State Farm's legal argument and examined the law cited by State Farm and other law on the subject; we determined that State Farm failed to prove that it was entitled to a judgment as a matter of law, which it is required to do in order to secure a summary judgment. Rule 56(c)(3), Ala. R. Civ. P.

. In Swartz, our supreme court recognized a wife's right to sue alleging loss of consortium. Swartz, 293 Ala. at 446, 304 So.2d at 887. In the main opinion, the court considered several arguments against the recognition of that right, including the possibility of overlapping damages. 293 Ala. at 445, 304 So.2d at 886. The opinion explained that the key to preventing overlapping recoveries was procedural in nature. Id.
"Because of the mutuality of interest of the husband and the wife in the marriage, the possibility of overlapping damages must be guarded against. In Diaz v. Eli Lilly & Co. (Mass.[1973]), 302 N.E.2d 555, the Massachusetts court pointed out that the key to the problem of double recovery was procedural. The court then elaborated as follows:
" 'As a practical matter, the consortium claim, when asserted at all, will usually be presented together with the negligence claim for the physical injuries, husband and wife joining in the same action. Such joinder is of course permitted and invited by the procedural rules. When, perchance, separate actions have been brought, the defendant (or plaintiffs in the actions) would normally be entitled to have them consolidated for trial. Further, we think the defendant could ordinarily insist, if he considered it to his advantage, that the other spouse be joined in the main negligence action so that a possible claim for loss of consortium should not be outstanding when the negligence claim was disposed of, leaving a possibility of duplicating recoveries.'
"The Massachusetts court based its conclusions on Massachusetts procedural rules governing permissive joinder, consolidation, and compulsory joinder, which in turn were based on corresponding provisions of the Federal Rules of Civil Procedure. Likewise our Alabama Rules of Civil Procedure as to Permissive Joinder (Rule 20), Consolidation (Rule 42), and Compulsory Joinder (Rule 19), are in all respects similar to their counterparts in the Federal Rules. We feel that the above mentioned Alabama Rules of Civil Procedure will assure an orderly disposition of all future claims for loss of consortium."

Id.

. Although the statute of limitations on Mrs. Jenkins's loss-of-consortium claim against Ramirez has run, State Farm cannot rely on that procedural bar. Ex parte Mason, 982 So.2d 520 (Ala.2007); State Farm Mut. Auto. Ins. Co. v. Bennett, 974 So.2d 959 (Ala.2007).